**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **CASE NO. 18-32070-sgj-11** |
| **FULCRUM EXPLORATION, LLC** | § | |
| | § | **Chapter 11** |
| Debtor | § | |

## DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION

Jason P. Kathman
State Bar No. 24070036
Brandon J. Tittle
State Bar No. 24090436
PRONSKE & KATHMAN, P.C.
2701 Dallas Pkwy, Suite 590
Plano, Texas 75093
(214) 658-6500 – Telephone
(214) 658-6509 – Facsimile
(214) 855-7584 – Facsimile

**COUNSEL FOR DEBTOR
AND DEBTOR IN POSSESSION**

**DATED: FEBRUARY 18, 2019**

## TABLE OF CONTENTS

I     **SUMMARY OF THE PLAN** ...................................................................................1
     1.1    Overview of the Plan ....................................................................................1
     1.2    Payments to Creditors .................................................................................1

II    **DEFINITIONS, RULES OF INTERPRETATION AND COMPUTATION OF TIME** .......................................................................................................................1
     2.1    Scope of Definitions ....................................................................................1
     2.2    Definitions....................................................................................................1
     2.3    Rules of Interpretation. ..............................................................................11
     2.4    Computation of Time. ................................................................................11
     2.5    Exhibits. .....................................................................................................11
     2.6    Approved Disclosure Statement. ...............................................................11

III   **DESIGNATION OF CLAIMS OF CLASSES OF CLAIMS**......................................12
     3.1    Designation of Classes of Claims. .............................................................12
     3.2    Unclassified Claims ...................................................................................12
     3.3    Classified Claims and Interests. ................................................................12

IV   **PAYMENT OF ADMINISTRATIVE CLAIMS AND EXPENSES AND CERTAIN PRIORITY CLAIMS** ....................................................................................................12
     4.1    Administrative Claims and Deadline. ........................................................12
     4.2    Professional Claims and Deadlines............................................................12
     4.4    Treatment of Administrative Claims and Professional Claims....................13
     4.4    Priority Tax Claims ...................................................................................13
     4.5    Payment of Statutory Fees .........................................................................13

V    **TREATMENT OF CLASSES OF CLAIMS AND EQUITY INTERESTS**...............13
     5.1    Class 1: Secured Claims of Taxing Authorities ..........................................13
     5.2    Class 2: Claims of Veritex Community Bank..............................................14
     5.3    Class 3.1: Claims of Unrecorded Walls WI Owners ..................................15
     5.4    Class 3.2: Claims of Walls NPI Owners....................................................15
     5.5    Class 3.3: Claims of Unrecored North Tipton WI Owners ........................15
     5.6    Class 4: Administrative Convenience Claims..............................................15
     5.7    Class 5: General Unsecured Claims............................................................15
     5.8    Class 6: Subordinated Claims ....................................................................15
     5.9    Class 7: Equity Interests.............................................................................16

VI      **MEANS OF IMPLEMENTING THE PLAN** ....................................................**16**

    6.1     Continued Corporate Existence .................................................16

    6.2     MHI Sale...............................................................................16

    6.3     Compromises and Settlements ..................................................17

    6.4     Walls Settlements....................................................................18

    6.5     Section 1145 Exemption ...........................................................19

    6.6     Exemption from Certain Transfer Taxes .......................................19

    6.7     Post-Effective Date Management ................................................20

    6.8     Authority.................................................................................20

    6.9     Preservation of Cuases of Action and Rights. ................................20

    6.10    Conditions to Effective Date......................................................21

    6.11    Waiver of Conditions Precedent. ...............................................22

VII     **PROVISIONS FOR THE REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** .............................................................................**22**

    7.1     MHI Assigned Contracts and Leases...........................................22

    7.2     Rejection of Any Net Royalty Interests Agreements.........................22

    7.3     General Assumption of Executory Contracts .................................22

    7.4     Cure of Defaults.......................................................................22

    7.5     Claims for Damages.................................................................23

VIII    **RESOLUTION OF UNDETERMINED CLAIMS**........................................**23**

    8.1  Standing .................................................................................23

    8.2     Effect of Bar Date. ...................................................................23

    8.3     Amendments to Claims; Claims Filed After the Effective Date.........................23

    8.4     Objection Deadline. ..................................................................23

    8.5     Creditor Response to Objection. .................................................24

    8.6     No Payment Pending Allowance ................................................24

    8.7     Allowance of Claims.................................................................24

    8.8     Estimation of Claims.................................................................24

IX      **DISTRIBUTION PROCEDURES** .......................................................**24**

    9.1     Restriction on Distributions of MHI Stock Consideration ..............................24

    9.2     Record Date for Claims. ............................................................25

    9.3     Form of Distributions.................................................................25

    9.4     Conditions to Distributions; Warranty of Entitlement........................25

    9.5     Withholding Taxes....................................................................25

| | | | |
|---|---|---|---|
| | 9.6 | Setoffs. | 25 |
| | 9.7 | Rounding | 25 |
| | 9.8 | *De Minimis* Distributions. | 25 |
| | 9.9 | Undeliverable and Unclaimed Distributions. | 26 |
| | 9.10 | Disputed Distributions | 26 |
| **X** | | **EFFECTS OF CONFIRMATION, INJUNCTION AND EXCULPATION** | **26** |
| | 10.1 | Notice of Effective Date. | 26 |
| | 10.2 | Binding Effect of Plan. | 27 |
| | 10.3 | Discharge. | 27 |
| | 10.4 | Injunction Against Interference with Plan. | 27 |
| | 10.5 | Exculpation. | 27 |
| **XI** | | **MODIFICATIONS OF THE PLAN** | **28** |
| | 11.1 | Amendments Prior to Confirmation Date. | 28 |
| | 11.2 | Amendments After Confirmation Date. | 28 |
| | 11.3 | Effect on Claims. | 28 |
| **XII** | | **RETENTION OF JURISDICTION** | **28** |
| | 12.1 | Purposes. | 28 |
| | 12.2 | Exclusive Jurisdiction. | 29 |
| | 12.3 | Abstention. | 30 |
| **XIII** | | **GENERAL PROVISIONS** | **30** |
| | 13.1 | Certain Rights Unaffected. | 30 |
| | 13.2 | Incorporation of Valuation Motion. | 30 |
| | 13.3 | Automatic Stay. | 30 |
| | 13.4 | Reservation of Rights. | 30 |
| | 13.5 | Rights Under 1129(b). | 30 |
| | 13.6 | Headings. | 30 |
| | 13.7 | Severability. | 30 |
| | 13.8 | Governing Law. | 30 |
| | 13.9 | Successors and Assigns. | 31 |
| | 13.10 | Insurance. | 31 |

## DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION
## DATED FEBRUARY 18, 2019

The Debtor proposes the following Plan.

## ARTICLE I.
## SUMMARY OF THE PLAN

1.1     Overview of the Plan.  The Plan provides for a distribution of the proceeds obtained from the sale of substantially all of the Debtor's assets, and for the resolution and treatment of outstanding Claims and Equity Interests.

1.2     Payments to Creditors.  The Plan provides for Creditors to be paid as provided in Article V herein. All Creditors of the Debtor will be paid as provided herein in accordance with the priority scheme established by the Bankruptcy Code. **PLEASE CONSULT ARTICLE V FOR SEPARATE INFORMATION REGARDING THE SPECIFIC TREATMENT OF YOUR CLAIM. ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

## ARTICLE II.
## DEFINITIONS, RULES OF INTERPRETATION AND COMPUTATION OF TIME

2.1     Scope of Definitions.  As used in this Plan and the Disclosure Statement, the following terms shall have their respective meanings as set forth below and, unless the context otherwise requires, shall be equally applicable to the singular and plural forms of the terms defined. Unless otherwise defined herein, the terms used in this Plan shall have the same meaning ascribed thereto in the Bankruptcy Code and the Bankruptcy Rules.

2.2     Definitions.

      2.2.1     1933 Act:  The Securities Act of 1933, as amended, and the rules and regulations promulgated thereunder.

      2.2.2     Administrative Claim:  Any Claim for payment of any cost or expense of administration of the Bankruptcy Case entitled to priority in accordance with Sections 503(b) and/or 507(a) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the Debtor's Estate and operating its business on and after the Petition Date to and including the Effective Date, and all allowances of compensation and reimbursement of expenses approved by the Bankruptcy Court in accordance with the Bankruptcy Code and any fees or charges assessed against the Debtor's Estate under Chapter 123, Title 28, United States Code.

      2.2.3     Administrative Claim Bar Date:  The date that is thirty (30) days after the Effective Date, unless not a Business Day, in which case it will be the first Business Day thereafter.

**CONSOLIDATED PLAN OF LIQUIDATION – PAGE 1**

2.2.4 <u>Ad Valoem Claim</u>: A Claim for taxes (together with any related interest, penalty, addition to tax or additional amount imposed by any Governmental Authority) which is assessed based upon the value of the Debtor's Asset and which is secured by a statutory Lien upon that Asset, or the net proceeds from the sale of such Asset, to the extent of the value of the interest of the holder of such Claim in the Debtor's interest in the Asset.

2.2.5 <u>Allowed</u>: When used with respect to a Claim or Equity Interest, means the Claim or Equity Interest (as applicable) (a) to the extent that it is listed in the Schedules in a liquidated, non-contingent, and undisputed amount, but only if no proof of Claim or proof of Equity Interest is Filed with the Bankruptcy Court to evidence such Claim or Equity Interest on or before the Bar Date; (b) any Equity Interest registered in the Debtor's books and records as of the Petition Date; (c) as evidenced by a proof of Claim or proof of Equity Interest Filed on or before the Bar Date, but only to the extent asserted in a liquidated amount, and only if no objection to the allowance of the Claim or Equity Interest or no motion to expunge the proof of Claim or Equity Interest is Filed on or before the Claims Objection Deadline; or (d) to the extent allowed by a Final Order.

2.2.6 <u>Asset</u>: All right, title and interest in and to any and all property of every kind or nature, whether tangible or intangible, owned by the Debtor or its Estate as of the Effective Date, including, but not limited to, Causes of Action.

2.2.7 <u>Avoidance Action</u>: Any and all rights, claims or actions which the Debtor may assert on behalf of the Estate under Chapter 5 of the Bankruptcy Code, including actions under one or more provisions of Sections 542, 544, 545, 546, 547, 548, 549, 550, 551 and/or 553 of the Bankruptcy Code, and any preference or fraudulent transfer action under any applicable state law, except to the extent that any such rights, claims, or actions are expressly released or waived in this Plan.

2.2.8 <u>Ballot</u>: The form of the ballot for voting to accept or to reject the Plan, which accompanies the Plan and the Disclosure Statement delivered to holders of Claims in Impaired Classes.

2.2.9 <u>Bankruptcy Case</u>: The the chapter 11 case of Fulcrum Exploration, LLC pending before the United States Bankruptcy Court for the Northern District of Texas, Case No. 18-32070-sgj-11.

2.2.10 <u>Bankruptcy Code</u>: The Bankruptcy Reform Act of 1978 as amended, and as applicable to this Chapter 11 case, § 101 *et seq.* Title 11, United States Code.

2.2.11   Bankruptcy Court:  The United States Bankruptcy Court for the Northern District of Texas.

2.2.12   Bankruptcy Rules:   The Federal Rules of Bankruptcy Procedure, as amended and prescribed under section 2075, Title 28, United States Code, as applicable to the Bankruptcy Case, together with the Local Rules of the Bankruptcy Court.

2.2.13   Bar Date:  The Bar Date is the last date on which proofs of Claim or proofs of Equity Interest may be timely Filed against the Debtor unless otherwise extended by stipulation filed with the Court or Final Order of the Bankruptcy Court, which deadline is October 22, 2018 for general unsecured claims.

2.2.14   Business Day:  Any day other than a Saturday, Sunday, or "legal holiday" as defined in Bankruptcy Rule 9006(a).

2.2.15   Cash:  Cash, cash equivalents and other readily marketable securities or instruments, including, without limitation, direct obligations of the United States of America, certificates of deposits issued by banks and commercial paper of any entity, including interest earned or accrued thereon, but specifically excluding any Collateral consisting of funds in deposit or escrow accounts securing a Secured Claim.

2.2.16   Cash Proceeds:  The Cash portion of the the consideration related to the MHI Sale.

2.2.17   Causes of Action:  Any Avoidance Action, claim, cause of action of any kind, suit, controversy, right to payment, whether legal or equitable, known or unknown, liquidated or unliquidated, fixed or contingent, of the Debtor, whether listed in the Debtor's Schedules (as amended, supplemented and/or modified from time to time), the Disclosure Statement, the Plan, the Confirmation Order, any pleading in the Bankruptcy Case, or any other disclosure, statement, correspondence or communication providing informal notice of such Cause of Action.

2.2.18   Claim:  Any right against the Debtor to (a) payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured or (b) an equitable remedy for a breach of performance if the breach would give rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

2.2.19   Claims Objection Deadline:  The date by which parties authorized by the Plan may file objections to Claims, which date shall be ninety (90) days after the Effective Date, unless extended by the Bankruptcy Court.  The

objection deadline with respect to Administrative Claims is specified separately in the Plan.

2.2.20 <u>Claims Register</u>: The register of proofs of Claim filed in the Bankruptcy Case, maintained by the Clerk of the United States Bankruptcy Court for the Northern District of Texas.

2.2.21 <u>Class</u>: One of the categories of Claims established under Article III of this Plan.

2.2.22 <u>Class 5 Note</u>: The seller-financed promissory note executed by MHI NewCo in connection with the MHI Sale in amount equal to the aggregate amount of Allowed Class 5 Claims, and which shall have the terms described generally in Section 6.2.3 of the Plan, and more specifically in the Sale Agreement or exhibits attached thereto.

2.2.23 <u>Class 6 Distribution</u>: The Distribution of MHI Stock, made on the MHI Stock Distribution Date, equal to the aggregate amount of Allowed Class 6 Claims.

2.2.24 <u>Collateral</u>: An Asset subject to a valid, enforceable and non-avoidable Lien securing the payment or performance of a Claim.

2.2.25 <u>Confirmation</u>: Confirmation means the entry of an Order of the Bankruptcy Court confirming this Plan.

2.2.26 <u>Confirmation Date</u>: The date of entry of the Confirmation Order by the Bankruptcy Court.

2.2.27 <u>Confirmation Hearing</u>: The hearing(s) before the Bankruptcy Court pursuant to Section 1128 of the Bankruptcy Code to consider confirmation of the Plan, as such hearing(s) may be continued, reschedules or delayed.

2.2.28 <u>Confirmation Order</u>: Order of the Bankruptcy Court confirming the Plan and approving the transactions contemplated herein.

2.2.29 <u>Contingent Claim</u>: Any Claim listed in the Schedules or in a Proof of Claim as "contingent."

2.2.30 <u>Creditor</u>: Any Person that is the holder of a Claim that arose on or before the Petition Date, or a Claim of any kind specified in Sections 502(g), 502(h), or 502(i) of the Bankruptcy Code.

2.2.31 <u>Debtor</u>: Fulcrum Exploration, LLC

2.2.32 <u>Disallowed</u>: When used with respect to a Claim or Equity Interest, any portion thereof, that: (a) has been disallowed by either a Final Order or

pursuant to a settlement; (b) has been withdrawn by the holder of the Claim or Equity Interest; (c)(i) is set forth in the Schedules at zero or as contingent, disputed, or unliquidated and (ii) as to which the Bar Date has been established but no proof of Claim or proof of Equity Interest has been Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law; or (d) has not been scheduled in the Schedules and as to which no proof of Claim or proof of Equity Interest has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to the Bankruptcy Code, a Final Order, or the Plan.

2.2.33 <u>Disclosure Statement</u>:  The Disclosure Statement Filed and served with respect to this Plan, as approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

2.2.34 <u>Disputed</u>:  The portion (including, when appropriate, the whole) of a Claim or Equity Interest that is not an Allowed Claim or Allowed Equity Interest as to which:  (a) a proof of Claim or proof of Equity Interest has been Filed, or deemed Filed under applicable law or Order of the Bankruptcy Court; (b) an objection has been or may be timely Filed; and (c) such objection has not been (i) withdrawn, (ii) overruled or denied in whole or in part pursuant to a Final Order, or (iii) granted in whole or part pursuant to a Final Order.  Before the time that an objection has been or may be Filed, a Claim or Equity Interest shall be considered a Disputed Claim or Equity Interest (a) if the amount or classification sof the Claim or Equity Interest specified in the proof of Claim or proof of Equity Interest exceeds the amount or classification of any corresponding Claim or Equity Interest is listed by the Debtor in its Schedules, to the extent of such excess; (b) in its entirety, if any corresponding Claim or Equity Interest is listed by the Debtor in its Schedules as disputed, contingent, or unliquidated; or (c) in its entirety, if no corresponding Claim or Equity Interest has been listed by the Debtor in its Schedules.

2.2.35 <u>Distribution</u>:  The distribution of Cash from the Reorganized Debtor pursuant to this Plan.

2.2.36 <u>Effective Date</u>:  The first Business Day on or after the Confirmation Date specified by the Debtor on which all of the conditions precedent to the Effective Date specified in <u>Section 6.10</u> of the Plan shall have been satisfied or otherwise effectvely waived; *provided, however,* that if such conditions precedent have been so satisfied or waived, but a stay, injunction or similar prohibition of the Confirmation Order is in effect, then the Effective Date shall be the first Business Day after such stay, injunction or similar prohibition is no longer in effect as long as the conditions precedent continue to be satisfied or waived.

**DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION – PAGE 5**

2.2.37 <u>Equity Interests</u>: An existing membership, stock, partnership, and/or equity interest in the Debtor including, without limitation, all issued, unissued, authorized or outstanding shares of stock or other equity interests (including common and preferred) of the Debtor, together with any warrants, options, other derivative securities, or contractual rights to purchase or acquire any such membership or equity interests at any time and all rights arising with respect thereto.

2.2.38 <u>Estate</u>: The bankruptcy estate of the Debtor created upon the commencement of the Bankruptcy Case pursuant to Section 541 of the Bankruptcy Code.

2.2.39 <u>Face Amount</u>: Means (a) when used in reference to a Disputed or Disallowed Claim, the full stated amount claimed by the holder of such Claim in any proof of Claim timely Filed or otherwise deemed timely Filed by a Final Order or other applicable bankruptcy law, and (b) when used in reference to an Allowed Claim, the Allowed Amount of such Claim.

2.2.40 <u>Fee Application</u>: An application of a Professional under Sections 328, 330, 331 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Bankruptcy Case.

2.2.41 <u>File, Filed, or Filing</u>: Means file, filed or filing with the clerk of the Bankruptcy Court, or it authorized designee in the Bankruptcy Case.

2.2.42 <u>Final Order</u>: Any order or a judgment which has not been reversed, stayed, modified or amended and as to which (i) the time to appeal or seek review, reargument or rehearing has expired and as to which no appeal or petition for certiorari, review or rehearing is pending or (ii) its appeal, review, reargument, rehearing or certiorari has been denied and a time to seek a further appeal, review, reargument, rehearing or certiorari has expired as a result of which such order shall have become final and nonappealable in accordance with applicable law.

2.2.43 <u>Fulcrum Production Partners Settlement Agreement</u>: That certain settlement agreement by and between the Debtor and Fulcrum Production Partners LP related to the unrecorded working interests that Fulcrum Production Partners LP has in certain wells of the Debtor.

2.2.44 <u>Gathering Agreements</u>: Those certain gathering agreements by and between the Debtor and Enterprise Crude Oil, LLC and Phillips 66.

2.2.45 <u>General Unsecured Claims</u>: Those Allowed Claims classified in Class 5 of this Plan.

2.2.46 <u>Governmental Authority</u>: Any transnational, domestic, or foreign federal, state or local governmental unit, authority, department, court, agency or

official, including any political subdivision thereof, or any tribal authority.

2.2.47    <u>Impaired</u>:  Has the same meaning as set forth in Section 1124 of the Bankruptcy Code.

2.2.48    <u>Insider</u>:  Has the same meaning as set forth in Section 101(31) of the Bankruptcy Code.

2.2.49    <u>Lien</u>:  With respect to any property or Asset, any mortgage, lien, interest pledge, charge, security interest, encumbrance, mechanics' lien, materialmen's lien, statutory lien or right, and other consensual or non-consensual lien, whenever granted and including, without limitation, those charges or interest in property within the meaning of "lien" under Section 101(37) of the Bankruptcy Code.

2.2.50    <u>MHI</u>:  Mineral Hill Industries, Ltd.

2.2.51    <u>MHI Assigned Contracts</u>:  Means those contracts designated as "Assigned Contracts" in the Sale Agreement to be assumed and assigned in conjunction with the MHI Sale.

2.2.52    <u>MHI Assigned Leases</u>:  Means those leases, other than oil and gas leases, designated as "Assigned Leases" in the Sale Agreement to be assumed and assigned in conjunction with the MHI Sale.

2.2.53    <u>MHI NewCo</u>:  Means the purchaser under the Sale Agreement, Mineral Hill Industries, Ltd. or a wholly-owned subsidiary of MHI.

2.2.54    <u>MHI Sale</u>:  The sale transaction of substantially all of the Debtor's assets described and detailed in the Sale Agreement.

2.2.55    <u>MHI Stock</u>:  Means that allocation of publically-traded stock in MHI transferred to the Debtor pursuant to the Sale Agreement and part of the consideration for the purchase of the Debtor's assets in the MHI Sale.

2.2.56    <u>MHI Stock Distribution Date</u>: Means the date that is (A) the earlier of: (i) thirty (30) months from the Effective Date, or (ii) thirty (30) days after the New Veritex Note is paid in full, or (B) such other date as may be agreed upon by the MHI and the Holders of Allowed Class 6 and Class 7 Claims (those receiving MHI Stock), but in no event, not prior to the payment in full of the New Veritex Note in full.

2.2.57    <u>New Veritex Note</u>:  The new term promissory note executed pursuant to and in connection with the treatment specified in <u>Section 5.2</u> of the Plan.

2.2.58 <u>North Tipton WI Owner Settlement Agreements</u>: The settlement agreements signed by the Unrecorded North Tipton WI Owners, which the Plan seeks to approve pursuant to Bankruptcy Rule 9019.

2.2.59 <u>Order</u>: Any order or judgment of the Bankruptcy Court as entered on the docket for the Bankruptcy Case.

2.2.60 <u>Payment</u>: Means the payment of Cash to the holders of Allowed Claims pursuant to this Plan.

2.2.61 <u>Person</u>: Any individual, entity, or Governmental Authority of any nature whatsoever, specifically including any individual, firm, company, corporation, partnership, trust, joint venture, association, joint stock company, limited liability company, estate, unincorporated organization, or any other entity.

2.2.62 <u>Petition Date</u>: June 24, 2018.

2.2.63 <u>Plan</u>: This Plan of Reorganization, either in its present form or as it may be altered, amended, modified, or supplemented from time to time.

2.2.64 <u>Plan Documents</u>: All documents, forms, lists and agreements contemplated under this Plan to effectuate the terms and conditions hereof.

2.2.65 <u>Plan Proponent</u>: The Debtor.

2.2.66 <u>Plan Supplement</u>: Means a supplemental appendix to the Plan containing certain documents, forms, exhibits, lists and schedules as specified in this Plan (and as may be necessary to effectuate the Plan and the transactions contemplated therein) and the Disclosure Statement which will be Filed with the Bankruptcy Court no later than three (3) days prior to the commencement of the Confirmation Hearing, as such documents may be altered, restated, modified, or supplementd from time to time.

2.2.67 <u>Priority Non-Tax Claim</u>: Any Claim entitled to a priority under, *inter alia*, Section 507(a) of the Bankruptcy Code other than a Priority Tax Claim.

2.2.68 <u>Priority Tax Claim</u>: Any Claim of a Governmental Authority that is entitled to priority in payment under Sections 502(i) and 507(a)(8) of the Bankruptcy Code.

2.2.69 <u>Pro Rata</u>: The proportion that the amount of an Allowed Claim in a particular Class bears to the aggregate Face Amount of all Allowed Claims in such Class.

2.2.70 Professional: Any Person employed in the Bankruptcy Case pursuant to Sections 326, 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code.

2.2.71 Professional Claim: Any Claim that is Filed by a Professional pursuant to Sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code.

2.2.72 Professional Claim Bar Date: The date that is one hundred twenty (120) days after the Effective Date.

2.2.73 Proof of Claim: Means a written statement setting forth a Creditor's Claim, conforming substantially to the appropriate official form and Filed in the Bankruptcy Case.

2.2.74 Reorganized Debtor: The legal entity that shall survive the Debtor as of the Confirmation Date.

2.2.75 Sale Agreement: The Asset Purchase Agreement authorized by this Plan and executed in conjunction therewith, by and between Fulcrum Exploration, LLC and MHI NewCo. related to MHI NewCo's purchase of the Debtor's assets.

2.2.76 Schedules: The Schedules of Assets and Liabilities and the Statements of Financial Affairs Filed by or on behalf of each Debtor in the Bankruptcy Case pursuant to Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as they have been or may hereafter be amended, modified or supplemented.

2.2.77 Secured Claim: Any Claim to the extent (a) secured by a Lien on Collateral which is not void or avoidable under applicable state and federal law, including the Bankruptcy Code or (b) subject to set off under Sections 553 of the Bankruptcy Code, in each case to the extent of the value of the Secured Creditor's interest in the Debtor's interests in the property or the amount of the set off, as applicable; *provided, however*, that nothing herein shall prohibit a Secured Creditor from making the election provided in Section 1111(b)(2) of the Bankruptcy Code.

2.2.78 Secured Creditor: Any Creditor that is the holder of a Secured Claim.

2.2.79 Starin Settlement Agreement: That certain settlement agreement by and between the Debtor and Wayne Starin related to unrecorded working interests Starin has in certain of the Debtor's wells.

2.2.80 U.S. Trustee Fees: Fees payable pursuant to 28 U.S.C. § 1930.

2.2.81 Undetermined Claim: Any Claim that is (a) a Disputed Claim; (b) a Claim arising through rejection of executory contracts or unexpired leases pursuant to this Plan; (c) an undetermined Administrative Claim; or (d) a claim that is an Unliquidated Claim or Contingent Claim.

2.2.82   Unimpaired:  When used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is not Impaired.

2.2.83   Unliquidated Claim:  Any Claim that is listed in the Schedules on in a Proof of Claim as "unliquidated."

2.2.84   Unrecorded Box-In WI Owners:  Means those Persons, other than the Debtor, who own working interest (that were note recorded in the county records of Tillman County, Oklahoma as of the Petition Date) located in Sections 31, 32, and 33-2S-17W of Tillman County, Oklahoma and/or Section 6-3S-18W of Tillman County, Oklahoma. The Unrecorded Box-In WI Owners include, but are not limited to: Craig Lyne, Mark Wheeler, Todd Gibson, Mark Macek, Best Petroleum, Mark Willis, Petroga, Katerine Izor, and Michelle Martel.

2.2.85   Unrecored Box-In WI Owner Settlement Agreements:  The aggregate settlement agreements entered into by and between the Debtor and the individual Unrecorded Box-In WI Owners.

2.2.86   Unrecored Walls WI Owners:  Means those Persons, other than the Debtor, who own working interests (that were not recorded in the county records for Jackson County, Oklahoma on the Petition Date) in the following wells: Walls No. 7, Walls No. 8, Walls No. 9 and Walls No. 10. Specifically, the Unrecorded Walls WI Owners include the following Persons: Rocky & Doreen Liuzzi Family Trust, Doug Fike, and Louis Ouellette.

2.2.87   Unsecured Claim:  Any Claim against the Debtor which is not an Administrative Claim, Priority Claim or Secured Claim.

2.2.88   Veritex:  Veritex Community Bank

2.2.89   Veritex Claim:  The Allowed Claim of Veritex Community Bank allowed in conjunction with the treatment provided in this Plan.

2.2.90   Veritex Remaining Claim:  The Veritex Claim minus any Cash paid on the Effective Date pursuant to the Plan.

2.2.91   Walls 7 Carveout:  Means the 13.01% working interests in the Walls No. 7 reserved and exempted from the MHI Sale.

2.2.92   Walls 8 Carveout:  Means the 40.01% working interests in the Walls No. 8 reserved and exempted from the MHI Sale.

2.2.93   Walls 9 Carveout:  Means the 40.01% working interests in the Walls No. 9 reserved and exempted from the MHI Sale.

2.2.94 <u>Walls 10 Carveout</u>: Means the 40.01% working interests in the Walls No. 10 reserved and exempted from the MHI Sale.

2.2.95 <u>Walls NPI Owners</u>: Means those Persons who are parties to those certain Net Profits Agreements with the Debtor related to the Walls No. 7, Walls No. 8, Walls No. 9 and Walls No. 10. Specifically, the Walls NPI Owners includes: BTM Investments IRA,LLC and EAM Investments IRA, LLC.

2.2.96 <u>Walls Wells</u>: Means collectively the Walls No. 7, Walls No. 8, Walls No. 9 and Walls No. 10 wells. For the avoidance of doubt, although the Debtor has two other wells (the Walls No. 1 and Walls No. 2) named "Walls," for purposes of this Plan, the defined term does not include those two wells and is limited to the Walls No. 7, Walls No. 8, Walls No. 9 and Walls No. 10.

2.3 <u>Rules of Interpretation</u>. For purposes of this Plan, (i) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (ii) any reference in the Plan to an existing document, pleading or exhibit Filed or to be Filed means such document or exhibit as it may have been or may be amended, modified, or supplemented as permitted herein; (iii) the words "herein," "hereto" and "hereof" refer to the Plan in its entirety rather than to a particular portion of the Plan; and (iv) the rules of construction set forth in Section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply, unless an alternate calculation is expressly provided herein (*i.e.*, Business Days).

2.4 <u>Computation of Time</u>. In computing any period of time prescribed or allowed in this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

2.5 <u>Exhibits</u>. All exhibits are incorporated into and are a part of the Plan as if set forth in full herein. Holders of Claims and Equity Interests may obtain a copy of the Filed exhibits upon written request to the Debtor. Upon their Filing, the exhibits may be inspected in the office of the clerk of the Bankruptcy Court or at the Bankruptcy Court's CM/ECF or PACER website. The documents contained in the exhibits shall be approved by the Bankruptcy Court pursuant to the Confirmation Order. The Debtor expressly reserves the right to modify or make additions to or subtractions from any exhibit or to the Plan and to amend, modify or supplement any exhibit to the Plan in conformance with the provisions of this Plan.

2.6 <u>Approved Disclosure Statement</u>. The terms and provisions of the Disclosure Statement, as approved by the Bankruptcy Court, are expressly incorporated herein, except where such provisions of the Disclosure Statement may conflict with the terms of this Plan. In the event that such a conflict arises, the terms of this Plan and the Confirmation Order shall control, with the Confirmation Order controlling over the terms of this Plan.

## ARTICLE III.
## DESIGNATION OF CLASSES OF CLAIMS

3.1     Designation of Classes of Claims.  A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and is classified in a different Class to the extent that any remainder of the Claim qualifies within the description of such different Class. A Claim is in a particular Class only to the extent that the Claim is an Allowed Claim in that Class and has not been paid, released or otherwise satisfied before the Effective Date.

3.2     Unclassified Claims.

  Allowed Administrative Claims (Unimpaired)
  Allowed Priority Tax Claims (Unimpaired)

3.3     Classified Claims and Interests.

| Class 1: | Claims of Taxing Authorities (Impaired) |
| Class 2: | Claims of Veritex Community Bank (Impaired) |
| Class 3.1: | Claims of Unrecorded Walls WI Owners (Impaired) |
| Class 3.2: | Claims of Walls NPI Owners |
| Class 3.3: | Claims of Unrecorded Box-In WI Owners (Impaired) |
| Class 4: | Administrative Convenience Claims (Impaired) |
| Class 5: | General Unsecured Claims |
| Class 6: | Claims of Certain Insiders |
| Class 7: | Equity Interests |

## ARTICLE IV.
## PAYMENT OF ADMINISTRATIVE CLAIMS AND EXPENSES AND CERTAIN PRIORITY CLAIMS

4.1     Administrative Claims and Deadline.  Holders of Administrative Claims that were incurred, accrued or in existence prior to the Effective Date, other than (a) a Professional Claim, (b) Allowed Administrative Claim as of the Effective Date, (c) Administrative Claim that represents a liability incurred and paid in the ordinary course of the Debtor's businesses, and (d) Administrative Claim based on a fee or charge assessed against the Estate under Chapter 123, Title 28, United States Code, must by no later than the Administrative Claim Bar Date: (i) File an application with the Bankruptcy Court for allowance of the Administrative Claim; and (ii) serve a copy of such application on the Debtor, the United States Trustee, and all other parties entitled to notice thereof. Failure to File and serve such application by the Administrative Claim Bar Date shall result in the Administrative Claim being forever barred and discharged. Except as specifically provided in the Plan, nothing in this Plan alters the law applicable to, and governing, the allowance of an Administrative Claim under the Bankruptcy Code and/or the Bankruptcy Rules.

4.2     Professional Claims and Deadline.  Each Professional who holds or asserts an Administrative Claim that is a Professional Claim incurred prior to the Effective Date shall File with the Bankruptcy Court and serve on all parties entitled to receive such notice its Fee Application by no later than the Professional Claim Bar Date. Failure to timely and properly File

and serve the Fee Application as required under this section shall result in the Professional Claim being forever barred and discharged. No Professional Claim will be deemed Allowed until an Order allowing the Professional Claim becomes a Final Order. Any party in interest with standing to object to a Professional Claim may File such an objection thereto.

4.3     Treatment of Administrative Claims and Professional Claims.  In full and final satisfaction of Allowed Administrative Claims, each Allowed Administrative Claim shall, unless otherwise agreed, be paid in full in Cash by the Debtor by the later of (a) fifteen (15) days after the Effective Date, or (b) fifteen (15) days after becoming an Allowed Administrative Claim; *provided, however*, that Allowed Administrative Claims that represent liabilities incurred on or after the Petition Date, but prior to the Effective Date, in the ordinary course of the Debtor's businesses which may be paid in the ordinary course of the Debtor's businesses without Order of the Bankruptcy Court, shall be paid in accordance with the agreements related thereto. Each Allowed Professional Claim, after deducting any retainer, shall be paid by the Debtor by the later of (i) five (5) Business Days after such Professional Claim is Allowed by a Final Order, (ii) on such date as agreed by the Debtor and the applicable Professional.

4.4     Priority Tax Claims.  In full and final satisfaction of Allowed Priority Tax Claims, each Allowed Priority Tax Claim shall, unless otherwise agreed, be paid in full in Cash in accordance with Section 1129(a)(9)(C) of the Bankruptcy Code by the later of (a) fifteen (15) days after the Effective Date, or (b) fifteen (15) days after becoming an Allowed Priority Tax Claim.

4.5     Payment of Statutory Fees.  All fees due and payable on or before the Effective Date (a) pursuant to 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing, and (b) to the United States Trustee, shall be paid by the Debtor within fifteen (15) days following the Effective Date.  From and after the Effective Date, any fees and charges which are assessed under Chapter 123, Title 28, United States Code, in relation to the Bankruptcy Case shall be paid by the Reorganized Debtor as they become due.

## ARTICLE V.
## TREATMENT OF CLASSES OF CLAIMS AND EQUITY INTERESTS

5.1     **Class 1: Secured Claims of Taxing Authorities**.  Unless otherwise agreed, each holder of an Allowed Ad Valorem Tax Claim, excluding any penalties, shall receive in full discharge or and in exchange for such Allowed Ad Valorem Tax Claim, and the Lien(s) securing the same, Cash in the full amount of their Allowed Claim, at the option of the Reorganized Debtor, by the later of (a) fifteen (15) days after the Effective Date, and (b) fifteen (15) days after becoming an Allowed Ad Valorem Tax Claim. Each holder of an Allowed Ad Valorem Tax Claim shall retain all liens in, to, or against any property of the Debtor and the Estate, such Liens shall continue to apply and attach to the Collateral with the same validity, extent, and priority as otherwise exists pending payment of each Allowed Ad Valorem Tax Claim in full, together with all applicable interest. Upon the payment of each Allowed Ad Valorem Tax Claim in full, together with all applicable interest, each lien securing such Allowed Ad Valorem Tax Claim shall be automatically, and without need for further order, document, or action, released and discharged.

Class 1 is Impaired under the Plan.  Holders of Allowed Ad Valorem Tax Claims shall be entitled to vote to accept or reject the Plan.

5.2 **Class 2: Claims of Veritex Community Bank**. Class 2 consists of all of the Allowed Claims of Veritex Community Bank, including, without limitation, all liens, security interests, mortgages, and deeds of trust, and other rights against the Debtor and the Estate, and their property securing the same.

    5.2.1 <u>Veritex Claim</u>: Veritex shall have an Allowed Secured Claim on the Effective Date in the amount of all principal, interest, costs fees, and expenses that are outstanding on the Effective Date (the "Veritex Claim").

    5.2.2 <u>Treatment</u>: In full and final satisfaction, discharge, and release of the Veritex Claim, Veritex shall receive (i) cash an amount not less than five million dollars ($5,000,000 USD) from the Cash Proceeds, and (ii) the New Veritex Note.

    5.2.3 <u>New Veritex Note</u>: The New Veritex Note shall have the following terms:

        (i) <u>Borrower</u>: MHI NewCo

        (ii) <u>Guarantors</u>: All pre-Effective Date guarantors

        (iii) <u>Principal</u>. An amount equal to the Veritex Claim minus $5,000,000 USD (or such larger amount that the Debtor pays Veritex from the Cash Proceeds)(the "Veritex Remaining Claim"), plus (ii) a 2 % modification fee calculated against the Veritex Remaining Claim.

        (iv) <u>Interest</u>. The Prime Rate plus 2%, with a minimum interest of 7.25%; provided, however, if MHI New Co exercises the extension described here, the interest rate shall be increased to prime plus 4%.

        (v) <u>Maturity</u>. The maturity of the New Veritex Note will be the date eighteen (18) months from the Effective Date of the Plan; provided, however, MHI New Co may absolutely and unconditionally extend the maturity of the New Veritex Note one time for a term of six (6) additional months.

        (vi) <u>Amortization</u>: The New Veritex Note shall be amortized over fifteen (15) years, and the New Veritex Note shall be repaid through monthly amortization payments.

        (vii) <u>Collateral</u>. The New Veritex Note shall be secured and collateralized by first priority fully perfected liens on all of the collateral that Veritex had a lien as of the Petition Date.

        (viii) <u>Prepayment</u>. MHI NewCo shall have the right to pre-pay in full (directly or through any refinance) the balance owed on the New Veritex Not at any time or from time to time without incurring any pre-payment penalty or interest.

Class 2 is Impaired under the Plan and is entitled to vote.

5.3 **Class 3.1: Claims of Unrecorded Walls WI Owners**. Class 3.1 consists of the Allowed Claims of the Unrecorded Walls WI Owners. In full and final satisfaction of the Allowed Class 3.1 Claims, each Holder of a Class 3.1 Claim shall receive its Pro Rata share of: (i) the Walls 7 Carveout, (ii) the Walls 8 Carveout, (iii) the Walls 9 Carveout, and (iv) the Walls 10 Carveout.

Class 3.1 is Impaired under the Plan and is entitled to vote.

5.4 **Class 3.2: Claims of Walls NPI Owners.** Class 3.2 consists of the Claims of the Walls NPI Owners, including, but not limited to any Claims related to the rejection of the their Net Profits Agreements. In full and final satisfaction of the Allowed Class 3.2 Claims, each Holder of a Class 3.2 Claim shall be entitled to enter into new Net Profits Interests with MHI NewCo on the same terms as the prepetition Net Profits Agreements.

Class 3.2 is Impaired under the Plan and is entitled to vote.

5.5 **Class 3.3: Claims of Unrecorded Box-In WI Owners.** Class 3.3 consists of the Claims of the Unrecorded Box-In WI Owners who refuse to agree to the settlement proposed and described in Section 6.3.3, and who may have damages that result from their working interests being avoided pursuant to 11 U.S.C. § 542. Holders of Allowed Class 3.3 Claims shall not receive any Distributions or consideration on account of their Allowed Class 3.3 Claims.

Class 3.3 is Impaired under the Plan and is deemed to reject the Plan pursuant to 11 U.S.C. 1129(g).

5.6 **Class 4: Administrative Convenience Claims.** Class 4 consists of (a) all Allowed Unsecured Claims that equal $1,000.00 or less and (b) any Allowed Class 5 General Unsecured Claims whose Holders elect in writing to reduce their Claim to $1,000.00. Allowed Class 4 Administrative Convenience Claims shall be paid 100% of their Allowed Claim on or before the date that is sixty (60) days after the Effective Date in full satisfaction of their Allowed Claim (the ("Convenience Payments").

Class 4 is Impaired under the Plan and is entitled to vote.

5.7 **Class 5: General Unsecured Claims.** Class 5 consists of all other Allowed Unsecured Claims against the Debtor not placed in any other Class under the Plan. Unless otherwise agreed in writing, Creditors holding Allowed Class 5 General Unsecured Claims shall receive, in full satisfaction and discharge of any Allowed Claim, an amount equal to 100% of their Allowed Claims paid in quarterly payments over a period of five years. The Reorganized Debtor may prepay, Pro Rata, any portion of the Allowed Class 5 Claims at any point without penalty.

Class 5 is Impaired under the Plan and is entitled to vote.

5.8 **Class 6: Subordinated Claims**. Class 6 consists of the debt Claims of certain Creditors who are voluntarily subordinating their Allowed Claims to the Claims of other Creditors. Specifically, Class 6 consists of the Allowed Claims based upon debt of the following Creditors: Derek Jensen, Michael Graham, Scott Douglas, Steve Taylor, William Sink, Scott Kravetz,

Fulcrum Point Technologies, Lisa Garwood, Louis Ouellette and Keith Sheldon (the collectively, the "Class 6 Creditors"). Unless otherwise agreed in writing, each Class 6 Creditor shall receive on the MHI Stock Distribution Date, in full satisfaction and discharge of any Allowed Class 6 Claim, an amount of MHI Stock (from the MHI Stock Consideration) equal in value to their Allowed Class 6 Claim (the "Class 6 Stock Distribution").

Class 6 is Impaired under the Plan and is entitled to vote.

5.9 **Class 7: Equity Interest**. Class 7 consists of the Equity Interests held by the members of the Debtor. On account of their Class 7 Equity Interests, the Holders of Equity Interests in the Debtor shall (a) retain their interests in in the Debtor (which Interests will become Interests in the Reorganized Debtor post-confirmation), and (b) on the MHI Stock Distribution Date, their Pro Rata share of the MHI Stock Consideration remaining after the Class 6 Stock Distribution.

## ARTICLE VI.
## MEANS OF IMPLEMENTING THE PLAN

6.1 Continued Corporate Existence. Upon completion of the MHI Sale, the Debtor shall, as a Reorganized Debtor, continue to exist after the Effective Date as a separate corporate entity, with all the powers of a limited liability company under applicable law and without prejudice to any rights to alter or terminate such existence under applicable state law. Further, after the Effective Date and the consummation of the MHI Sale, the Reorganized Debtor shall continue as the licensed operator of the wells sold pursuant to the MHI Sale.

6.2 MHI Sale. Subject to and in connection with the occurrence of the Effective Date, the Debtor shall take all such action as may be necessary or appropriate to effectuate the MHI Sale on the terms and subject to the conditions set forth in the Sale Agreement.

6.2.1 Sale Agreement. Upon the occurrence of the Effective Date, the Debtor shall be authorized to execute the Sale Agreement and consummate the transaction(s) contemplated therein.

6.2.2 New Veritex Note. In connection with the MHI Sale, MHI NewCo shall execute the New Veritex Note and the necessary ancillary and collateral documents.

6.2.3 Class 5 Note. In connection with the MHI Sale, MHI NewCo shall execute the Class 5 Note, which shall be equal to the aggregate amount of Allowed Claims in Class 5. The Class 5 Note shall have the following terms:

    (i) Borrower: MHI NewCo

    (ii) Principal. An amount equal to the aggregate amount of Allowed Claims in Class 5.

    (iii) Interest. The Prime Rate.

    (iv) Maturity. The date that is five (5) years after the Effective Date of the Plan.

(v)   Amortization:  The Class 5 Note shall be amortized quarterly over five (5) years, and the Class 5 Note shall be repaid through quarterly amortization payments.

6.2.4   Conflicts.  In the event of any conflict whatsoever between the terms of the Plan and the Sale Agreement, the terms of the Plan shall control, and the Plan shall be deemed to incorporate in their entirety the terms, provisions, and conditions of the Sale Agreement.

6.3   Compromises and Settlements.  Pursuant to Sections 105 and 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, Distribution and other benefits provided in the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of certain Claims and Causes of Action arising prior to the Effective Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements and all other compromises or settlements provided in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtor, the Estate, Creditors and other parties in interest, and are fair, equitable and within the range of reasonableness. To the extent necessary to effectuate and implement the compromises and releases contained in this Plan, the Plan shall be deemed to constitute a motion under Bankruptcy Rule 9019 seeking the Bankruptcy Court's approval of all of the compromises and releases contained herein. More specifically, and without limiting this provision, the Plan shall be deemed to constitute a motion under Bankruptcy Rule 9019 to settle any Claims and the treatment provided for them in this Plan.

6.3.1   Settlements with the Unrecored Box-In WI Owners.  The Plan shall be expressly construed as a motion to approve, pursuant to Federal Rule of Bankruptcy Procedure 9019, the settlements with the Unrecorded Box-In WI Owners. As detailed in the Unrecorded Box-In WI Owner Settlement Agreements, attached to the Plan Supplement, the Unrecored Box-In WI Owners who signed settlement agreements agreed to cancel, surrender, and/or transfer any interests they have in any wells of the Debtor in exchange for the Debtor forever releasing them for any and all claims the Debtor may have against such Unrecorded Box-In WI Owners, including any and all claims the Debtor may have for joint interests billings or such Unrecorded Box-In WI Owner's share of operating expenses of authorizations for expenditures.

6.3.2   Settlement with Wayne Starin.  The Plan shall be expressly construed as a motion to approve, pursuant to Federal Rule of Bankruptcy Procedure 9010, the Starin Settlement Agreement. As specified further in the Starin Settlement Agreement attached to the Plan Supplement, Wayne Starin agrees to cancel, surrender, and/or transfer any interests he has in any wells of the Debtor in full settlement and release of any and all claims the Debtor has related to 11 U.S.C. § 542 to avoid his unrecorded interests. In exchange, Starin shall receive an Allowed Class 5 Claim in the amount of $70,115.92.

6.3.3 <u>Settlement with Fulcrum Production Partners</u>. The Plan shall be expressly construed as a motion to approve, pursuant to Federal Rule of Bankruptcy Procedure 9010, the Fulcrum Production Partners Settlement Agreement. As specified further in the Fulcrum Production Partners Settlement Agreement attached to the Plan Supplement, Fulcrum Production Partners LP agrees to cancel, surrender, and/or transfer any interests it has in any wells of the Debtor in full settlement and release of any and all claims the Debtor has related to 11 U.S.C. § 542 to avoid its unrecorded interests.

6.4 <u>Walls Settlements</u>. The Plan shall constitute a full settlement and compromise of any and all claims, incuding Avoidance Actions, by and between the Unrecorded WI Owners, Walls NPI Owners, the Debtor, and the officers and directors of each of the entities.

6.4.1 <u>The Unrecorded Walls WI Owners Settlement</u>. Each Unrecorded Walls WI Owner shall cancel, surrender, and/or transfer any interests it may have in the Walls Wells. In exchange for such cancellation, surrender, and/or transfer of such interests, the Unrecorded Walls WI Owners shall receive Allowed Class 3.1 Claims equal to the amount each Unrecorded Walls WI Owner paid for its working interests in the Walls Wells.

6.4.2 <u>Walls NPI Owners Settlement</u>. The Walls NPI Owners shall cancel, relinquish and/or transfer any Net Profits Interests they have in the Walls Wells. In exchange for the cancellation, relinquishment, and/or transfer, each Walls NPI Owner shall receive an Allowed Class 3.2 Claim in an amount equal to what that Walls NPI Owner paid for its net proftits interests. Furthermore, the Walls NPI Owners expressly agree that any Claim it may have as a result of the rejection (to the extent applicable) of its net profits interests agreement, shall be characaterized as an Allowed Class 3.2 Claim and shall be expressly limited to the amount that such Walls NPI Owner paid for such net profits interests.

6.4.3 **<u>Unrecorded Walls WI Owner Releases</u>. As of the Effective Date, the Debtor shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged each Unrecorded Walls WI Owner, its attorneys, accountants, financial advisors, directors, employees, officers, parents, agents, subsidiaries, and the successors and assigns of any of them (collectively, the "<u>Unrecorded Walls WI Owner Releasees</u>") accepting this compromise and settlement on it ballots, from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, covenants, contracts, controversies, agreements, promises, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Debtor has, have had, may have or may claim to have against the Unrecorded Walls WI Owner Releasees, including any and all Avoidance Actions.**

6.4.4 **<u>Walls NPI Owner Releases</u>. As of the Effective Date, the Debtor shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged each of the Walls NPI Owners, its attorneys, accountants, financial advisors, directors, employees, officers, parents, agents,**

subsidiaries, and the successors and assigns of any of them (collectively, the "Walls NPI Owner Releasees") accepting this compromise and settlement on it ballots, from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, covenants, contracts, controversies, agreements, promises, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Debtor has, have had, may have or may claim to have against the Walls NPI Owner Releasees, including any and all Avoidance Actions.

6.4.5 **Debtor Releases.**  As of the Effective Date, each Unrecorded Walls WI Owner or Walls NPI Owner accepting the compromises and settlements on its ballot, shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged each the Debtor, the Debtor's predecessors, successors and assigns, subsidiaries, affiliates, and all of their respective current and former officers and directors, principals, shareholders (regardless of whether such interests are held directly or indirectly), managers, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, and such persons' respective heirs, executors, estates, servants, and nominees, in each case in their capacity as such (the "Debtor Releasees") from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, covenants, contracts, controversies, agreements, promises, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Unrecorded Walls WI Owner has, have had, may have or may claim to have against the Debtor Releasees.

6.4.6 Acceptance of Settlement By Ballot.  The Unrecorded Walls WI Owners and Walls NPI Owners shall indicate their acceptance of the terms of this settlement by electing as such on the ballots solicited to Class 3.1 and Class 3.2 Creditors.

6.5 Section 1145 Exemption.  The offer, issuance, and distribution of all of the MHI Shares hereunder to holders of Allowed Claims and Allowed Fulcrum Equity Interests in the Debtor, as applicablye, shall be exempt, pursuant to section 1145 of the Bankruptcy Code, from registration under (i) the 1933 Act, as amended, and all rules and regulations promulgated thereunder, (ii) any state, national, or local law requiring registration for the offer, issuance, or distribution of securities.

6.6 Exemption from Certain Transfer Taxes.  Pursuant to section 1146 of the Bankruptcy Code, (a) the issuance, transfer, or exchange of any securities, instruments or documents, (b) the creation of any Lien, mortgage, deed of trust, or other security interest, (c) the making or assignment of any lease or sublease or the makting or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in connection with the Plan, including, without limitation, any deeds, bills of sale, or assignments executed in connection with any of the transaction contemplated under the Plan or the reinvesting, transfer, or sale of any real or personal property of the Debtor pursuant to, in implementation of, or as contemplated in the

Plan, (d) the grant of collateral to secure the New Veritex Note, and (e) the issuance, renewal, modications, or securing of indebtedness by such means, and the making, delivery, or recording of any deed or other instrument or transfer under, in furtherance of, or in connection with, the Plan, incluindg, without limitation, the Confirmation Oder, shall not be subject to any document recording tax, stamp tax, conveyance fees, or other similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial filing or recording fee, regulatory filing or recording fee, sales tax, use tax, or other similar tax or governmental assessment. Consistent with the foregoing, each recorder of deed or similar official for any county, city, or Governmental Unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument without requiring the payment of any filing fees, documentary stamp tax, deed stamp, stamp tax, transfer tax, intangible tax, or similar tax.

6.7     Post-Effective Date Management.  The Reorganized Debtor shall continue to exist after the Effective Date in accordance with the applicable laws of the State of Texas, for the lawful purposes allowed thereunder, including operating any and all of the wells and oil and gas assets sols pursuant to the Sale Agreement. The Reorganized Debtor shall continue to be managed by Derek Jensen and he shall receive compensation commensurate with his experience in the industry.

6.8     Authority.  All actions and transactions contemplated under this Plan are and shall be authorized upon Confirmation of this Plan without the need of further approvals, notices or meetings of the Debtor's directors, officers, managers and/or members, other than notice provided by serving this Plan on (i) all known holders of Claims and (ii) all current holders of Equity Interests of the Debtor.  Specifically, all amendments to the certificate of formation and operating agreement of the Debtor and all other corporate actions on behalf of the Debtor as may be necessary to put into effect or carry out the terms and intent of this Plan, including, without limitation, any mergers, consolidations, or dissolution of the Debtor, may be effected, exercised, and taken without further action by the Debtor's directors, officers, managers and/or members with like effect as if effected, exercised and taken by unanimous action of the directors, officers, managers and/or members of the Debtor.

6.9     Preservation of Causes of Action and Rights.  All Causes of Action, rights of setoff and other legal and equitable defenses of the Debtor or the Estate are preserved unless expressly released, waived, or relinquished under the Plan or the Confirmation Order, and shall vest in the Reorganized Debtor. No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as an indication that a Cause of Action will not be pursued against them.

**Further, unless expressly released by the Plan or by an order of the Bankruptcy Court, any and all such claims and Causes of Action against third parties are specifically reserved, including but not limited to any such claims or Causes of Action relating to any counterclaims, demands, controversies, costs, debts, sums of money, accounts, reckonings, bonds, bills, damages, obligations, liabilities, objections, legal proceedings, equitable proceedings, and executions of any nature, type, or description, avoidance actions, preference actions, fraudulent transfer actions, strong-arm power actions, state law fraudulent transfer actions, improper assignment of interest, negligence, gross negligence, willful misconduct, usury, fraud, deceit, misrepresentation, conspiracy, unconscionability, duress, economic duress, defamation, control, interference with contractual and business**

**relationships, breach of fiduciary duty, conversion, aiding and abetting, civil conspiracy, conflicts of interest, misuse of insider information, concealment, disclosure, secrecy, misuse of collateral, wrongful release of collateral, failure to inspect, environmental due diligence, negligent loan processing and administration, wrongful recoupment, wrongful setoff, violations of statutes and regulations of governmental entities, instrumentalities and agencies, equitable subordination, debt re-characterization, substantive consolidation, securities and antitrust laws violations, tying arrangements, deceptive trade practices, breach or abuse of any alleged fiduciary duty, breach of any special relationship, course of conduct or dealing, obligation of fair dealing, obligation of good faith, malpractice, at law or in equity, in contract, in tort, or otherwise, known or unknown, suspected or unsuspected.**

Unless expressly released by the Plan or by an Order of the Bankruptcy Court, the Debtor may hold claims against a holder of a Claim or Equity Interest, including but not limited to, the following claims and Causes of Action, all of which shall be preserved:

- Preference claims under section 547 of the Bankruptcy Code;

- Fraudulent transfer and other avoidance claims arising under section 506, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code and various state laws;

- Avoidance Actions related to any unrecorded working interest owners, including, but not limited to any of the Unrecorded Walls WI Owners, the Unrecorded Box-In WI Owners, Wayne Starin, and Fulcrum Production Partners LP.

- Unauthorized post-petition transfer claims including, without limitation, claims under section 549 of the Bankruptcy Code;

- Claims and Causes of Action asserted in current litigation, whether commenced pre- or post-petition; and

- Counterclaims asserted in current litigation.

6.10    <u>Conditions to Effective Date</u>.    The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied in accordance with the terms hereof:

(a)    The Confirmation Order shall have become a Final Order;

(b)    All actions, documents, and agreements necessary to implement the Plan shall have been effected or executed;

(c)    The Debtor, MHI NewCo, and MHI shall have received any authorizations, consents, regulatory approvals, rulings, letters, no-action letters, opinions, or documents that are necessary to implement the Plan and are required by law, regulation, or order; and

      (d)    All conditions precedent to consummation of the MHI Sale, pursuant to the Sale Agreement, shall have been satisfied or waived in accordance with the Sale Agreement.

6.11   <u>Waiver of Conditions Precedent</u>.  Except as otherwise provided herein or in the Sale Agreement, any action required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and not such action shall be deemd to have occurred prior to the taking of any other such action. The Debtor reserves the right to waive the occurrence of the conditions precedent set forth in <u>Section 6.10</u> hereof or to modify any of such conditions precedent. Any such written waiver or such condition precedents may be effected at any time, without notice or leave or order of the Bankruptcy Court, and without any other formal action other than proceeding to consummate the Plan.

**ARTICLE VII.**
**<u>PROVISIONS FOR THE REJECTION OF EXCUTORY CONTRACTS AND UNEXPIRED LEASES</u>**

7.1   <u>MHI Assigned Contracts and Leases</u>. All MHI Assigned Contracts and MHI Assigned Leases to which the Debtor is a party are hereby assumed and assigned pursuant to, and subject to, the terms of the Sale Agreement.

7.2   <u>Rejection of Any Net Profits Interests Agreements</u>.  The Plan shall constitute, to the extent necessary, a motion to reject any and all Net Royalty Interests Agreements executed in relation to the Walls 7, 8, 9, 10 or 11. More specifically, without limiting the prior sentence, the Debtor expressly rejects the the Net Profits Interests Agreements with the Walls NPI Owners.

7.3   <u>General Rejection of Executory Contracts</u>. Unless (i) otherwise specified herein (*i.e.* the Gathering Agreements), (ii) previously assumed by order of the Court, or (iii) designated and identified as an MHI Assigned Contract or MHI Assigned Lease, all executory contracts and unexpired leases are hereby rejected.

7.4   <u>Assumption of Gathering Agreements</u>.  The Debtor expressly assumes the Gathering Agreements.

7.5   <u>Cure of Defaults</u>.  Unless otherwise provided for in the Plan, the Reorganized Debtor shall cure all defaults existing under any assumed Executory Contract pursuant to the provisions of Sections 1123(a)(5)(G) and 365(b) of the Bankruptcy Code, by paying the amount, if any, claimed by any party to such Executory Contract as set forth in a proof of claim, which shall be filed with the Court upon the earlier of (a) 30 days after express notice is given of the Debtor's intent to assume such Executory Contract or (b) within thirty (30) days after the Confirmation Date.  Such proof of claim shall be titled "Assumption Cure Proof of Claim." Alternatively, the Reorganized Debtor may pay such amount as may be agreed upon between the Reorganized Debtor and any party to such Executory Contract, provided an Assumption Cure Proof of Claim is timely filed within thirty (30) days after the Confirmation Date. Payment of any amount claimed in an Assumption Cure Proof of Claim or otherwise agreed to shall be in full satisfaction, discharge and cure of all such defaults (including any other Claims filed by any such party as a result of such defaults), provided, however, that if the Reorganized Debtor files, within

thirty (30) days of the filing of an Assumption Proof of Claim, an objection in writing to the amount set forth, the Court shall determine the amount actually due and owing with respect to the defaults or shall approve the settlement of any such Claims. Payment of such Claims shall be made by the Reorganized Debtor on the later of: (i) ten (10) Business Days after the expiration of the thirty day (30) period for filing an objection to any Assumption Cure Proof of Claim filed pursuant to this section; or (ii) when a timely objection is filed, within ten (10) Business Days after an order of the Court allowing such Claim becomes a Final Order.

7.6     Claims for Damages. Unless otherwise specified in a separate Final Order of the Bankruptcy Court, any Claim based upon rejection of an executory contract or unexpired lease under the Plan must be Filed with the Bankruptcy Court and served on the Reorganized Debtor such that the Claim is actually received within thirty (30) days of the Effective Date. Nothwithstanding the foregoing, and for the sake of clarity, nothing in this section is meant to modify any prior Order of the Bankruptcy Court related to a rejection of an executory contract or unexpired lease, and to the extent a date is specified in such order, such date shall be the deadline by which Claims based upon rejection must be Filed. All Allowed Claims for rejection damages, unless otherwise specifically provided for or addressed in this Plan, shall be treated as Class 5 General Unsecured Claims. Any Claim not Filed within such time will be forever barred from assertion against the Debtor and its Estate.

## ARTICLE VIII.
## RESOLUTION OF UNDETERMINED CLAIMS

8.1     Standing. In addition to all other parties that may otherwise have standing to object to Claims, the Reorganized Debtor shall have specific standing to object to the allowance of said Claims.

8.2     Effect of Bar Date. In accordance with Bankruptcy Rule 3003(c), any entity, Person or Creditor whose Claim was listed in the Schedules, or holds a Contingent Claim, Unliquidated Claim, or Disputed claims, and did not file a proof of Claim before the Bar Date, shall not be treated as a Creditor with respect to such Claim for purposes of voting or distribution.

8.3     Amendments to Claims; Claims Filed After the Effective Date. Except as otherwise provided in the Plan, and subject to the Bar Date, a Claim may not be amended after the Effective Date without the prior written authorization of the Bankruptcy Court. Except as otherwise provided in the Plan, any amended Claim Filed with the Bankruptcy Court after the Effective Date shall be deemed Disallowed in full and expunged without the need for any action by the Debtor.

8.4     Objection Deadline. Within ninety (90) days after the Effective Date, unless such date is extended by Order of the Court after notice and hearing, the Reorganized Debtor may file with the Bankruptcy Court objections to Claims and interests and shall serve a copy of each such objection upon the Holder of the Claim or interest to which such objection pertains, but upon no other party or party-in-interest. Unless arising from an Avoidance Action, any proof of Claim filed after the Confirmation Date shall be of no force and effect and need not be objected to. Any Undetermined Claim may be litigated to Final Order. The Reorganized Debtor may compromise and settle any Undetermined Claim without the necessity of any further notice or approval of the Bankruptcy Court, and Bankruptcy Rule 9019 shall not apply to any settlement of an

Undetermined Claim after the Effective Date. Nothing in this Plan extends the Bar Date set in the Bankruptcy Case or grants any Creditor any greater rights with respect to a late-filed Claim than such Creditor otherwise has.

8.5 <u>Creditor Response to Objection</u>. With respect to any objection to a Claim when such objection is filed after the Effective Date but otherwise in compliance with this Plan, the Creditor whose Claim was the subject of the objection must file with the Bankruptcy Court and serve a response to the objection upon the Reorganized Debtor and the objecting party no later than thirty (30) days from the date of service of any such objection. Failure to file and serve such a response within the thirty (30) days shall cause the Bankruptcy Court to enter a default judgment against the non-responding Creditor and thereby grant the relief requested in the objection without further notice to such Creditor. Any such objection shall contain prominent negative notice language informing the objected-to creditor of the same.

8.6 <u>No Payment Pending Allowance</u>. Notwithstanding any other provision in the Plan, if any portion of a Claim is Disputed or is an Undetermined Claim, then no payment or Distribution shall be made on account of any portion of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

8.7 <u>Allowance of Claims</u>. At the time, and to the extent that a Disputed or an Undetermined Claim becomes an Allowed Claim, such Allowed Claim shall be entitled to such Distributions. Such Distributions shall be made in the manner provided for by this Plan, or any Final Order of the Bankruptcy Court with respect to such Allowed Claim.

8.8 <u>Estimation of Claims</u>. The Debtor or the Reorganized Debtor may at any time request that the Bankruptcy Court estimate any Contingent Claim, Unliquidated Claim or Disputed Claim pursuant to 11 U.S.C. § 502(c), regardless of whether the Debtor or the Reorganized Debtor previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates an Undetermined Claim, the amount so estimated shall constitute either the allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtor or the Reorganized Debtor may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated, compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

## ARTICLE IX.
## DISTRIBUTION PROCEDURES

9.1 <u>Restriction on Distributions of MHI Stock Consideration</u>. The Distributions of MHI Stock shall not be made until the MHI Stock Distribution Date, which for the avoidance of doubt, unless otherwise agreed in writing from Veritex, cannot occur until the New Veritex Note is paid in full.

**DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION – PAGE 24**

9.2     Record Date for Claims.  The record date for Distributions to Allowed Claims under the Plan shall be the date the Bankruptcy Court enters its Order approving the Disclosure Statement. For purposes of Distribution to holders of Allowed Claims, the Reorganized Debtor will rely on the Claims Register maintained by the Bankruptcy Court except to the extent a notice of transfer of Claim has been Filed with the Bankruptcy Court prior to the record date pursuant to Bankruptcy Rule 3001.

9.3     Form of Distributions.  Any Cash payment to be made pursuant to the Plan may be made by check or wire transfer, at the option of the Debtor.

9.4     Conditions to Distributions; Warranty of Entitlement.  Each and every Creditor who receives and accepts a Distribution under the Plan on account of an Allowed Claim is deemed to have warranted to the Reorganized Debtor that such Creditor is the lawful holder of the Allowed Claim, is authorized to receive the Distribution, and that there are no outstanding commitments, agreements or understandings, express or implied, that may or can, in any way, defeat or modify the right of the Creditor to receive the Distribution.

9.5     Withholding Taxes.  In connection with this Plan, to the extent applicable, the Reorganized Debtor shall comply with all tax withholding and reporting requirements validly imposed on them by any governmental authority, and all Distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in this Plan to the contrary, the Reorganized Debtor shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including, without limitation, payment of applicable withholding taxes from a Distribution, and conditioning a Distribution upon receipt of necessary tax reporting information from the holder of the Claim.

9.6     Setoffs.  Except as otherwise expressly provided in the Plan and pursuant to Sections 502(d) or 553 of the Bankruptcy Code or any applicable non-bankruptcy law, the Reorganized Debtor may upon application and approval by the Bankruptcy Court, setoff against any Distribution to be made pursuant to the Plan on account of an Allowed Claim any claims, rights or Causes of Action held by the Reorganized Debtor against the holder of the Allowed Claim, or in relation to the Allowed Claim; *provided, however*, that neither the failure to effect such a setoff nor the allowance of any Claim shall constitute a waiver or release by the Reorganized Debtor of any such claims, rights or Causes of Action. If the Reorganized Debtor fails to setoff against a Claim and seeks to collect from the holder of such Claim after Distribution to that holder pursuant to the Plan, the Reorganized Debtor shall be entitled to full recovery on the claims of the Debtor or its Estate, if any, against the holder of such Claim.

9.7     Rounding.  Where the calculation of a distribution results in a fraction of a cent owing, the calculation shall be rounded down to the nearest whole cent for purposes of paying (or reserving) the Distribution.

9.8     *De Minimis* Distributions.  Notwithstanding any provision of the Plan to the contrary, no Distribution of less than twenty-five dollars ($25.00) shall be made on an Allowed Claim from the Reorganized Debtor, unless such Distribution shall be a final Distribution.

9.9    Undeliverable and Unclaimed Distributions.  Any Person that is entitled to receive a Distribution of Cash under the Plan but fails to cash a check within ninety (90) days of its issuance shall be entitled to receive a reissued check from the Reorganized Debtor for the amount of the original check, without any interest, if such Person requests the Reorganized Debtor to reissue such check and provides such documentation as may be requested to verify that such Person is entitled to such check prior to the later of: (i) the first anniversary of the Effective Date; or (ii) six (6) months after such Person's Claim becomes an Allowed Claim.  After the expiration of the applicable deadline to request a check to be reissued, the Person who fails to cash a check within ninety (90) days of its issuance shall not be entitled to receive any Distribution under the Plan on account of the Claim that was attempted to be paid. If the Distribution to any holder of an Allowed Claim is returned to the Reorganized Debtor as undeliverable, no further Distributions will be made to such holder unless and until the Reorganized Debtor is notified in writing of such holder's current address; *provided*, *however*, a claim for an undeliverable Distribution must be made within one hundred eighty (180) days following the date of issuance of the original Distribution. After such date, all unclaimed property shall revert to the Reorganized Debtor for further disbursement in accordance with the Plan, and the Claim of any holder or successor to such holder with respect to such property shall be discharged, disallowed, and forever barred notwithstanding any federal or state escheatment laws to the contrary. The Reorganized Debtor has no obligation to independently undertake any investigation to determine the whereabouts of any holder of an Allowed Claim.

9.10    Disputed Distributions.  No Distribution will be made on account of a Disputed Claim unless and until it becomes Allowed.  Upon a request for estimation, the Bankruptcy Court will determine what amount of Cash from the initial and subsequent Distributions is sufficient to reserve on account of any Disputed Claim not otherwise treated in the Plan pursuant to Section 502 of the Bankruptcy Code or applicable law; in which case, the amount so determined by the Bankruptcy Court shall be deemed the Allowed amount of such Disputed Claims for purposes of the Plan or, in lieu thereof, the Bankruptcy Court will determine the maximum amount to which such Claim may be ultimately Allowed.  Upon motion by a party in interest, the Bankruptcy Court may determine the appropriate amount of any reserves required in connection with a Disputed Claim.   In the event that a dispute arises as to the rightful owner of an Allowed Claim, or a Distribution thereon, the Reorganized Debtor may either (a) deposit the Distribution into the Disputed Claims Reserve until a determination is made as to the rightful owner of the Distribution by the Bankruptcy Court or by written agreement between each of the Persons making claim to the Distribution, or (b) interplead the Distribution into the registry of the Bankruptcy Court or such other court having jurisdiction over the Disputed Distribution and the Persons making claim to such Distribution, reserving the right to assert any and all claims that the Reorganized Debtor may have in relation to such interpleader action; *provided, however,* that once segregated or interplead, interest shall cease to accrue on an Allowed Claim.

## ARTICLE X.
## EFFECTS OF CONFIRMATION OF PLAN, INJUNCTION AND EXCULPATION

10.1    Notice of the Effective Date.  On or before ten (10) Business Days after occurrence of the Effective Date, the Reorganized Debtor shall mail or cause to be mailed to all holders of Claims and Equity Interests a notice that informs such holders of the following: (a) entry of the Confirmation Order; (b) occurrence of the Effective Date; (c) the Administrative Claim Bar Date;

(d) Professional Claim Bar Date; and (e) such other matters that the Reorganized Debtor deems appropriate.

10.2    Binding Effect of Plan.  Upon the Effective Date, the Plan and each of its provisions shall be binding on the Debtor, the Reorganized Debtor, all Creditors, all Equity Interest holders, and all Persons acquiring property under the Plan, whether or not they voted to accept the Plan, whether or not they had a right to vote on the Plan, whether or not any Claim or Equity Interest held by any of them is Impaired under the Plan, whether or not any Claim or Equity Interest held by any of them is Allowed in full, only in part, or Disallowed in full, and whether or not a Distribution is made to any of them under the Plan.

10.3    Discharge.  Except as otherwise provided herein or in the Confirmation Order, any consideration distributed under the Plan shall be in exchange for and in complete satisfaction, discharge, and release of all Claims of any nature whatsoever against the Debtor or any of its assets or properties; and except as otherwise provided herein, upon the Effective Date, the Debtor shall be deemed discharged and released to the extent permitted by Section 1141 of the Bankruptcy Code from any and all Claims, including but not limited to demands and liabilities that arose before the Effective Date, whether or not (a) a proof of claim based upon such debt is filed or deemed filed under Section 501 of the Bankruptcy Code; (b) a Claim based upon such debt is allowed under Section 502 of the Bankruptcy Code; or (c) the Holder of the Claim based upon such debt has accepted the Plan.  Except as provided herein, the Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtor.  Except as provided herein, pursuant to Section 524 of the Bankruptcy Code, such discharge shall void any judgment against the Debtor at any time obtained to the extent it relates to a Claim discharged, and operates as an injunction against the prosecution of any action against the Debtor or the property of the Debtor, to the extent it relates to a Claim discharged.

10.4    Injunction Against Interference with Plan.  Upon the Effective Date, all holders of Claims, all holders of Equity Interests, and all other parties in interest in the Bankruptcy Case, along with their respective current and former officers, directors, principals, employees and agents, shall be and are hereby enjoined from taking any action to interfere with the implementation or consummation of the Plan.

10.5    Exculpations.  NEITHER THE DEBTOR'S PROFESSIONALS, NOR ANY OF THEIR RESPECTIVE PRESENT OFFICERS, EMPLOYEES, AGENTS, REPRESENTATIVES, ADVISORS, AFFILIATES, UNDERWRITERS OR INVESTMENT BANKERS, NOR ANY OTHER PROFESSIONAL PERSONS EMPLOYED BY ANY OF THEM (COLLECTIVELY, THE "EXCULPATED PARTIES"), SHALL HAVE OR INCUR ANY LIABILITY TO ANY PERSON FOR ANY ACT TAKEN OR OMISSION IN CONNECTION WITH OR RELATED TO FORMULATING, NEGOTIATING, IMPLEMENTING, CONFIRMING OR CONSUMMATING THE PLAN, THE DISCLOSURE STATEMENT, EXCEPT FOR WILLFUL MISCONDUCT. THE EXCULPATED PERSONS SHALL HAVE NO LIABILITY, EXCEPT FOR WILLFUL MISCONDUCT, TO THE DEBTOR, ANY CREDITOR, ANY EQUITY INTEREST HOLDER, AND ANY OTHER PARTY IN INTEREST IN THE BANKRUPTCY CASE, OR ANY OTHER PERSON FOR ACTIONS TAKEN OR NOT TAKEN UNDER THE PLAN, IN CONNECTION HEREWITH OR WITH RESPECT THERETO, OR ARISING OUT OF THEIR ADMINISTRATION OF THE

PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN INCLUDING, WITHOUT LIMITATION, FAILURE TO OBTAIN CONFIRMATION OR TO SATISFY ANY CONDITION OR CONDITIONS, OR REFUSAL TO WAIVE ANY CONDITION OR CONDITIONS, TO THE OCCURRENCE OF THE EFFECTIVE DATE, AND IN ALL RESPECTS SUCH EXCULPATED PERSONS SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES UNDER THE PLAN.

## ARTICLE XI.
## MODIFICATIONS OF THE PLAN

11.1    Amendments Prior to Confirmation Date.  The Debtor reserves the right to amend or modify the Plan prior to Confirmation pursuant to Section 1127(a) of the Bankruptcy Code, and the Plan, as amended shall become the new Plan.

11.2    Amendments After Confirmation Date.  The Debtor may amend or modify the Plan before its substantial consummation, provided that the Plan, as amended or modified, meets the requirements of the Bankruptcy Code and the Bankruptcy Court, after notice and hearing, confirms this Plan, as modified.

11.3    Effect on Claims.  A holder of a Claim that has accepted or rejected this Plan shall be deemed to have accepted or rejected, as the case may be, this Plan, as modified, unless, within the time fixed by the Bankruptcy Court, such holder changes its previous acceptance or rejection.

## ARTICLE XII.
## RETENTION OF JURISDICTION

12.1    Purposes.  Notwithstanding entry of the Confirmation Order, the Bankruptcy Court shall retain jurisdiction over the Bankruptcy Case for the following purposes:

(i)     to determine any and all objections to the allowance of Claims or Equity Interests, both before and after the Confirmation Date, including any objections to the classification of any Claim or Equity Interest;

(ii)    to determine any and all applications for fees and expenses authorized to be paid or reimbursed in accordance with Section 503(b) of the Bankruptcy Code or this Plan;

(iii)   to determine any and all pending applications for the assumption or rejection of executory contracts or for the rejection or assumption and assignment, as the case may be, of unexpired leases to which the Debtor is a party or with respect to which it may be liable; to hear and determine any actions to void or terminate unexpired contracts or leases, and to hear and determine and, if need be, to liquidate any and all Claims arising therefrom;

(iv)    to hear and determine any and all actions initiated by the Reorganized Debtor, whether by motion, complaint or otherwise;

    (v)    to determine any and all applications, motions, adversary proceedings and contested matters pending before the Bankruptcy Court on the Confirmation Date or Filed or instituted after the Confirmation Date;

    (vi)    to modify this Plan, the Disclosure Statement or any document created in connection with this Plan, or remedy any defect or omission or reconcile any inconsistency in any Order of the Bankruptcy Court, this Plan, the Disclosure Statement or any document created in connection with this Plan, in such manner as may be necessary to carry out the purposes and effects of this Plan to the extent authorized by the Bankruptcy Code;

    (vii)    to ensure that the Distributions are accomplished in accordance with the provisions of this Plan;

    (viii)    to Allow, Disallow, determine, liquidate, or estimate any Claim or Equity Interest, and to enter or enforce any Order requiring the Filing of any such Claim or Equity Interest before a particular date;

    (ix)    to enter such Orders as may be necessary to interpret, enforce, administer, consummate, implement and effectuate the operative provisions of this Plan, the Confirmation Order and all documents and agreements provided for herein or therein or executed pursuant hereto or thereto including, without limitation, entering appropriate Orders to protect the Estate from creditor actions;

    (x)    to hear any other matter not inconsistent with Chapter 11 of the Bankruptcy Code;

    (xi)    to enter and implement such Orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked or vacated;

    (xii)    to determine such other matters as may arise in connection with this Plan, the Disclosure Statement or the Confirmation Order;

    (xiii)    to enforce all Orders, judgments, injunctions, and rulings entered in connection with the Bankruptcy Case;

    (xiv)    to determine all issues relating to the Claims of the IRS, and other taxing authorities, state or federal;

    (xv)    to determine any Avoidance Actions;

    (xvi)    to enter a Final Order and final decree closing the Bankruptcy Case.

12.2   <u>Exclusive Jurisdiction</u>.  The Bankruptcy Court shall have exclusive jurisdiction to resolve all controversies, suits and disputes that may arise in connection with the interpretation, enforcement, consummation, implementation or administration of this Plan, the Confirmation Order or the Disclosure Statement, and all entities shall be enjoined from commencing any legal

or equitable action or proceeding with respect to such matters in any other court or administrative or regulatory body.

12.3 <u>Abstention</u>. If the Bankruptcy Court abstains from exercising jurisdiction or is otherwise without jurisdiction over any matter arising out of the Bankruptcy Case, including the matters set forth in this Article XII, then this Article XII shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE XIII.
## GENERAL PROVISIONS

13.1 <u>Certain Rights Unaffected</u>. Except as otherwise provided herein, any rights or obligations which the Creditors may have among themselves as to their respective Claims or the relative priority or subordination thereof are unaffected by this Plan.

13.2 <u>Incorporation of Valuation Motion</u>. To the extent necessary to effectuate and implement the provisions of this Plan, the Plan shall be deemed to constitute a motion for valuation under the Bankruptcy Code, including the value of any lien, security interest, or encumbrance treated by this Plan; *provided, however,* that nothing in this Plan shall alter any valuation ordered by Final Order of the Bankruptcy Court in the Bankruptcy Case.

13.3 <u>Automatic Stay</u>. The automatic stay provided in Section 362 of the Bankruptcy Code, shall remain in effect through the Effective Date, unless otherwise specifically modified, annulled, or terminated by the Bankruptcy Court pursuant to a separate order, and shall terminate on the Effective Date.

13.4 <u>Reservation of Rights</u>. The Plan shall have no force or effect unless and until the Effective Date occurs. Prior to the Effective Date, none of the filing of the Plan, any statement or provision contained in the Plan, or action taken by the Debtor with respect to the Plan shall be, or shall be deemed to be, an admission or waiver of any rights of the Debtor or any other party with respect to any Claims or Equity Interests or any other matter.

13.5 <u>Rights Under 1129(b)</u>. **The Debtor hereby gives notice of its intent to seek confirmation under the cram down provisions of Section 1129(b) of the Bankruptcy Code, if necessary**.

13.6 <u>Headings</u>. The article and section headings used in this Plan are inserted for convenience and reference only and neither constitute a part of this Plan nor in any manner affect the terms, provisions or interpretations of this Plan.

13.7 <u>Severability</u>. If any term or provision in this Plan is determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other term or provision of this Plan.

13.8 <u>Governing Law</u>. Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan and any documents, agreements and instruments executed in connection with this Plan (except to the extent such documents, agreements and

instruments designate otherwise) shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas.

     13.9   <u>Successors and Assigns</u>.  The rights and obligations of any entity named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such entity.

     13.10   <u>Insurance</u>.  Notwithstanding anything to the contrary in this Plan, neither the Confirmation Order nor Confirmation and consummation of this Plan shall have any effect on the insurance policies of the Debtor or its current or former directors, officers or managers (including, but not limited to, director and officer liability policies to the extent that the Debtor or its current or former directors, officers and managers have any rights under such policies) in which the Debtor or its current or former directors, officer or managers are or were an insured party or any claim asserted thereunder. Each insurance company is prohibited from denying, refusing, altering or delaying coverage for the Debtor (or its current or former directors, officers or managers) on any basis regarding or related to the Bankruptcy Case, this Plan or any provision within this Plan, including the treatment or means of liquidation set out within this Plan for insured claims.

Dated: February 18, 2019          **FULCRUM EXPLORATION, LLC**

               By:    <u>*/s/ Derek Jensen*</u>
                        Name: Derek Jensen
                        Title:   President

OF COUNSEL:

Jason P. Kathman
State Bar No. 24070036
Brandon J. Tittle
State Bar No. 24090436
PRONSKE & KATHMAN, P.C.
2701 Dallas Pkwy, Suite 590
Plano, Texas 75093
(214) 658-6500 - Telephone
(214) 658-6509 - Facsimile
Email: jkathman@pgkpc.com
Email: btittle@pgkpc.com

**COUNSEL FOR DEBTOR
AND DEBTOR IN POSSESSION**